MIDDLESEX COUNTY COURT OF COMMON PLEAS.

KATHERINE KATONA, PLAINTIFF, v. THE COLONIAL LIFE INSURANCE COMPANY OF AMERICA, DEFENDANT.

Decided June 4, 1934.

For the plaintiff, *John E. Toolan.*

For the defendant, *Horace E. Barwis.*

LYON, J. This case was by agreement of counsel submitted to the court on an agreed state of facts which reads as follows:

"1. On or about the 13th day of July, 1926, a policy of insurance was issued to John Katona, now deceased, wherein plaintiff was named beneficiary and designated as 'his wife,' wherein it was stipulated that in consideration of the payment of $13.80 quarterly, the defendant would pay to the beneficiary therein, one thousand ($1,000) dollars immediately upon receipt of due written proof of the death of said John Katona. The said John Katona departed this life on July 9th, 1933.

2. The deceased John Katona married one Ida Katko Katona in Hungary on March 4th, 1901. The deceased then

came to America alone and stayed here until 1904 when he went back to live with his wife. One child was born in Hungary. In 1906, the deceased again came to America and resided in Carteret, New Jersey. One year later, his wife, Ida Katko Katona came to America and resided with the deceased in Carteret, where two more children of the marriage were born. In 1912, Ida Katko Katona returned to Europe and was in a pregnant condition at the time. Thereafter, another child was born in Europe. The deceased, therefore, had four (4) children by this wife, Ida Katko Katona, who are now living.

3. In 1924, the deceased went to board with the plaintiff, Katherine Katona. He had not seen or co-habited with his wife, Ida Katko Katona, since 1912. In 1926, he, the deceased, obtained in the borough of Carteret, New Jersey, a marriage license naming therein as his proposed wife, this plaintiff, Katherine Katona. This marriage license was never used. On the 13th day of July, 1926, the deceased procured the policy of insurance which is the subject of this suit, from the defendant herein. On July 22d, 1927, the deceased procured another marriage license from the borough of Carteret and a ceremony of marriage was performed by the recorder, Nathaniel Jacoby, a copy of said certificate is annexed hereto and marked *Schedule A,* and from that time on, the deceased lived with the plaintiff as man and wife and held her out as his wife in the community.

4. On the 27th day of May, 1932, the legal wife, Ida Katko Katona, divorced the said John Katona, now deceased, through the Royal Court of Budapest in the name of the Hungarian holy crown, a certified copy of said decree is hereto annexed and marked *Schedule B."*

The insured in this case was living with the plaintiff, to all intent and purposes as his wife, supporting her and holding her out to the world as such. He had not lived with his lawful wife since 1912, at which time she returned to Europe. In May, 1932, she obtained a divorce from him in Hungary. The insured had not seen or cohabited with his wife since 1912 and in 1924 went to board with the plaintiff, and from

that time on apparently treated her as his wife. The insurance policy in question was dated July 30th, 1926, and named the plaintiff as beneficiary as "Katherine Katona, his wife."

It is quite clear that under the circumstances the words "his wife" were merely a description of the person and that it is immaterial whether or not she was his lawful wife. *Doney* v. *Equitable Life Assurance Society*, 97 *N. J. L.* 393.

Defendant, however, defends upon two grounds: first, that the plaintiff had no insurable interest in the life of the deceased, and, second, that there was fraud in the making of the contract.

As to the ground that the plaintiff had no insurable interest in the life of the deceased, the defendant contends, on the authority of the footnote in 37 *C. J.* 385, that the cases in New Jersey, which hold that no insurable interest is necessary, may be regarded merely as *dicta*.

I do not regard those cases as such. In the case of *Trenton* v. *Johnson*, 24 *N. J. L.* 576, the court passes squarely on the principle, basing its decision upon the nature of the contract itself. It holds that the English courts which held that an interest in the assured was required was founded, not on the common law, but on the statute of 14 *Geo.* 3, *c.* 48. The opinion says: "This statute not extending to Ireland, the courts in that country have held in several recent cases, that at the common law, policies of insurance are valid without any interest." Later in the opinion Mr. Justice Elmer says as follows: "I confess, however, that whatever might be my opinion as to the expediency of a statute like that in England, before quoted, I must agree with the Irish courts in holding that such is not the law." He further states as follows: "Modern experience has proved the value of insurances upon the insurer's own life, or upon the life of another, upon whom the insurer may be dependent, or in whose life he has a real or supposed interest. And it is worthy of notice, that even in England since the statute, so great is considered the injustice of requiring the continued subsistence of an insurable interest, that in practice it is disregarded, and the offices find

it to their interest, and are in the common practice of paying, without any inquiry as to the interest."

The case of *Vivar* v. *Knights of Pythias,* 52 *N. J. L.* 455 (at *p.* 465), seems to be directly in point, not only as to the question of insurable interest, but also upon the question of fraud, the other point raised by the defendant.

In that case the application stated that the benefit was to be made payable "to my wife Emily Louisa Vivar," and the certificate sued on was made payable to "Emily Louisa Vivar, his wife." The trial judge rejected evidence offered by the defendant to show that, before and at the time of the plaintiff's marriage to Vivar, he had a lawful wife living, and both he and the plaintiff knew it. The defendant in that case while admitting that the plaintiff was the person intended by the contract, yet insisted that her being Vivar's lawful wife was made a condition of the obligation, that as a part of the contract Vivar warranted the existence of such relationship. The court made a distinction between a warranty and a representation, which distinction must apply to the case at bar, because the policy here says that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

The court then goes on to discuss the question of fraud and, quoting from *Parsons on Contracts,* says: "It is obvious that the fraud must be material to the contract or transaction which is to be voided because of it," and then points out that the misrepresentation was not material to the contract, and uses the following language which is pertinent to the case at bar. "It seems manifest that a subject thus committed to the control of the insured was not material to the contract of the insurer, nor so regarded by the insurer, and that if Vivar had declared Emily Louisa Vivar to be not related to him, as the lodge now alleges the truth to have been, the contract would have been made on precisely the same terms as at present."

The court then gives special attention to the question of an insurable interest and holds as follows: "In New Jersey, the tendency of judicial opinion seems to be in favor of the

proposition that the assured need not have an interest in the life insured in order to support the contract of insurance." And further: "Our conclusion is, that the relationship of Vivar to the plaintiff was not material to the contract, either in fact or in contemplation of the insurer, and that, therefore, the falsity of Vivar's statement regarding it could not invalidate the insurance."

It is quite clear, therefore, that the plaintiff is entitled to the amount of the insurance policy, and judgment should go accordingly for the sum of one thousand dollars ($1,000) with interest from the date upon which proof of death was given to the defendant, with costs.